## Bennett v. City of Philadelphia

*Frank J. Williams,* for plaintiff.

*Carol A. Mickey,* for defendant.

DiBONA, *J.,* August 4, 1983—Before ·the court are the preliminary objections of defendant, the City of Philadelphia (city) to the complaint in trespass of plaintiff, Carol Bennett (Bennett).

## I. FACTS

Bennett alleges that on June 10, 1980 she sought treatment by the City's Department of Public Health, Community Health Services, Family Planning Clinic. On September 27, 1981, she had an intra-uterine device inserted by unnamed persons at the clinic. On September 10, 1982, Bennett was diagnosed as having pelvic inflammatory disease. According to the allegations of the complaint, Bennett allegedly contracted this disease because old cotton balls had been lodged in her vagina.

Bennett commenced the action by filing a complaint on May 13, 1983, alleging that the city,

through its agents, failed to employ reasonable skill in treating her. The city filed its preliminary objections in the nature of a demurrer on June 8, 1983. The city contends that the Political Subdivision Tort Claims Act, 42 Pa. C.S.A. §8541 et seq confers immunity for municipalities and their employees for claims of medical malpractice.

## II. DISCUSSION

The city has claimed that the failure to provide proper medical treatment is not within the exceptions to immunity enumerated in Section 202(a) of the Act. Plaintiff concedes that her medical malpractice claim is outside the eight exceptions to the grant of immunity accorded to political subdivisions. See e.g. Wimbish v. School District of Penn Hills, 59 Commw. 620, 430 A.2d 710 (1981)

The General Assembly could have elected to provide a specific exception for medical malpractice and chose not to do so. When Sections 201 and 202(a) of the Act are compared with the sovereign immunity statute applicable to the Commonwealth of Pennsylvania, 42 Pa. C.S.A. §8522(b)(2), it is clear that the legislature granted a waiver of sovereign immunity with regard to medical liability on the part of the Commonwealth and its employees. No such provision was enacted with regard to political subdivisions.

Bennett acknowledges that the legislature subjected the Commonwealth, and not political subdivisions, to liability when a claimant alleges medical malpractice on the part of the latter's employees. Bennett contends, however, that this distinction between local government agencies and the Commonwealth is irrational and violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

Accordingly, Bennett argues that Section 8522(b)(2) regarding the Commonwealth, should be applicable to local agencies.

The starting point of an equal protection analysis is a determination of whether the legislature has created a classification for the unequal distribution of benefits or imposition of burdens. Robson v. Penn Hills School District, 63 Pa. Commw. 250, 437 A.2d 1273, 1276 (1981). Here, the classifications between victims of medical malpractice occasioned by state, rather than municipal employees, is a serious distinction.

The inquiry does not end, however, with the discovery of unequal treatment. "Absent, as here, an invidious discrimination against a suspect class or a fundamental right burdened, a legislative classification must be sustained unless it is patently arbitrary and bears no rational relationship to a legitimate government interest." Robson, supra.

Here, as in Robson, the Tort Claims Act was an attempt to stabilize the political subdivision's ability to obtain insurance coverage by defining the risks to be covered. See Legislative Journal — House p. 3856 (November 15, 1978). The costs of insurance against medical malpractice are, indeed, high. It was within the province of the legislature to determine that certain bars to suit are necessary for the operation of local government. Carroll v. County of York, __ Pa. Commw. _____, 437 A.2d 394, 397 (1981). The decision to except municipalities from this type of liability, given the more limited financial resources of political subdivisions when compared with the Commonwealth, was within the power of the legislature.

Accordingly, the court concludes that the classifications evidenced in the Tort Claims Act bear a fair and substantial relationship to the purpose of the

legislation. Although the classification bars plaintiff's action, it is not violative of the Fourteenth Amendment.

### III. CONCLUSION

In view of the foregoing, the court will grant the preliminary objections of the city and dismiss the complaint. An appropriate order will be entered.

### ORDER

And now, August 4, 1983, it appearing plaintiff filed a response to defendant's preliminary objections, it is hereby ordered and decreed that the order of this court dated July 12, 1983, is vacated to permit consideration of plaintiff's answer to preliminary objections on the merits.

It is further ordered and decreed, upon consideration of the preliminary objections and answer thereto, that defendant's preliminary objections are granted and plaintiff's complaint is dismissed. See attached opinion.